We're ready to hear argument now in Moderson against the City of Neenah. Good morning, your honors. Mr. Stern. Yes, my name is Walter Stern from Kenosha, and I represent the appellate. As the court knows, the summary judgment was granted September 5th of last year. We're dealing with a situation on December 5th that Eagle Nation, the security was breached by Brian Flatoff, and wanting to get his motorcycle, wanting to get it fixed, and he had a very high-powered gun with him. The main part of our case deals with two issues. One is the probable cause to detain, and the second one deals with qualified immunity. I'll take qualified immunity first. In this particular case, the objective evidence, a reasonable police officer would not have detained the plaintiffs after there had been gunfire, much after, in the late afternoon. What were the objective facts? One, there was Vance Dalton, who allegedly stole a motorcycle, contacted dispatch, told them that there was one man named Brian who was a hostage taker. Secondly, Steve Arado, who was in the basement, also contacted dispatch and indicated that there was a man armed and dangerous in the upstairs of Eagle Nation. I take your point, Mr. Stern, that the police are told by more than one person that there's one man with a gun, he's shooting. Yes. The police also confront a barrage of bullets when they come. They see their fellow officers disappear, fall down some steps. There's this smoky haze when gunfire hits the fire extinguisher. Bullets are coming from different places. Is it your position that they are to ignore all of that new, really sensory information that they're receiving on the scene, and therefore stopping plaintiffs at no point was justified after all of that new information comes to being? No, that is not our point. Their main point is, by the time that the dust settled, so to speak, they had knowledge from Catherine Volker, who was doing the negotiation with Brian Flatoff, that it was Brian Flatoff. It wasn't anyone else. But they don't know which one is, you know, Mr. Flatoff. And, you know, they couldn't possibly really rule out that there were others involved. They thought it was an ambush, and it certainly looked like an ambush to the police, it would seem. The general description of that man could have been, you know, any one of these people. Your Honor, can I answer that? At the time, Mr. Stern, the camera is in front of you. Oh, I'm sorry. I'm very sorry, Judge. At the time that the dust did settle, the only facts in front of a reasonable police officer was that it was one person. The dust had settled. It was not until late afternoon that the hostages were released. You know, I really understand that from the plaintiff's perspective, it was an affront to be detained and in some cases handcuffed. And in Mr. Arado's case, to have his personal effects confiscated. But it was so chaotic. It was so dangerous. And haven't we said in other such situations that the police may detain individuals until they can sort things out? But they already had, you know, two and a half hours to sort things out. And then you have Gerald Ilkey, who submitted an affidavit, saying that he went to the police department at 930, indicating a discussion with Fladoff that concerned him. And then the next day received a voicemail that indicated that there would be harm. I agree. Under Rickman, the officers are given slack. But we're just saying that the envelope has been stretched too much because the incident occurred basically all day. Well, you certainly can't say that as to Moterson. Because he is simply, after he's handcuffed and taken to the police car, he's then released and taken to go see his son. He's not taken to the police station for further interviews, as Peterson and Arado are. But there's no— And Moterson goes back to the police station, but he's a volunteer. It's on a voluntary basis that he does that. Yes. I think in regard to Peterson and Arado, by that time, my client, Ryan Moterson, had already said there's this one person. And to that extent, there was much less detention than the other two. Yes. Any other questions? No. Thank you, Your Honor. Thank you, Mr. Stern. Mr. Wirth. Thank you. Good morning, and may it please the Court. This case involves an appeal of a properly granted summary judgment that seeks reversal but doesn't say why. The section of the brief, if you will, that addresses the summary judgment decision itself is three paragraphs long, two of which are the standard by which summary judgment is granted. As the Court has observed, this isn't a series of discrete doors that are open and closing. This is an all-day hostage situation in which a hostage is tragically killed, a police officer is shot. There are multiple efforts by the police tactical team to infiltrate the hostage location, all of which are met by gunfire. It simply doesn't create a material question of fact that there had been ongoing reports during the day that there was one hostage taker and multiple hostages. It doesn't identify who the hostage taker is to the officers. The officers are the ones who are charged with the objective observational evidence that they have featured. And as the Court has observed, when they first enter the building, two of the officers fall down the stairs. One of the officers issues commands, none of which are obeyed by any person in that building, and are then met with small arms fire that drives them out of the building. They've now lost two officers down a flight of stairs, they've lost one officer who was shot fortunately in the helmet, and they've retreated to a position where they are now met with a discussion that the hostage taker has given a deadline by which he will further injure or further escalate the situation. The law is not, as the appellants have posited it, that any warrantless detention or arrest without probable cause, as they refer to it, is automatically a violation of the Fourth and Fourteenth Amendment. It is not. The Court undertakes a balancing act of whether or not the detention, in this case, one of them as short as one minute, was reasonable under the circumstances that the officers faced at the time. With respect to Mr. Moterson and the late Mr. Peterson, they were still, the hostage situation was still ongoing when they were told they could leave the building. Officers rushed up to them, separated them, interviewed them, and then turned them over to kind of a central investigation location. Would you address, so I take it you don't dispute that all three of them were seized at some point or another? There's no dispute about that. Is that correct? Yes, they were detained. It's a matter of the circumstances of that detention. Would you address Mr. Stern's contention that, you know, this took way too long, basically. It's a contention he's at least making here at oral argument. Sure. That it took too long and why, at least as to Arado and Peterson, he says it's, you know, two hours later, they're still in custody. Yeah, the scope of the incident exhausted what I'll say is the room space at the Nina Police Department. They had to take over some space at the Manassas Police Department. They had to take over some space in a staging area. They called in the Wisconsin State Patrol. There was a hostage negotiation going on with the negotiator, and there were various locations to which each of the individuals were taken. But in each instance, the discussion that it took too long to interview them is inaccurate. In each instance, the conflation of the time they were being interviewed with the time they were being detained is inaccurate. The time they were being detained was until that point where the officers determined they were not the shooter. After that point, Mr. Arado, for instance, met his attorney at the police department and voluntarily gave a statement. Mr. Moterson met his son and voluntarily gave a statement. Do you have any idea of the longest period of time for which any of the plaintiffs was involuntarily detained? There wasn't testimony on the exact amount of time, but Mr. Peterson, for instance, described the description in the interview process was a minute. Mr. Moterson was detained for approximately that time, but then he voluntarily was transported to meet his son. So that's being characterized as an extension of his detention because he's still in the police car being driven down to the police station. I'm really unclear. How do you put Peterson at a minute when he was handcuffed, questioned on the scene, then put into a car, and then taken to the police station to be interviewed? How do you get a minute out of that? I misspoke. That was Moterson. Yes, Mr. Peterson had his cell phone taken from him, had various personal items taken from him, and then was transported to one of these temporary investigation stations. You are correct in that. So to answer Jez Roepner's question, the extension of the interview time to include the transportation time to the various investigation, I'm going to use the word substation, although that's too dramatic for what it actually was, is being characterized as the detention time, when in fact that was the accommodation. By that time, they were identified as not being the shooter, and there was cooperative effort from the plaintiffs in that respect. Well, now, how do we know that with Mr. Peterson? With Mr. Arado, we do have evidence in the record he was told he's not under arrest. Once he's at the station and he's in the middle of this interview, he's told he's not under arrest. But I don't see anything like that for Mr. Peterson. Well, with respect to Mr. Peterson, keeping in mind that he was one of the two hostages that exited while the discussion with Mr. Flatoff is that there were additional individuals being held hostage, he essentially allowed them to leave. And with respect to Mr. Peterson, he was turned over to the Wisconsin State Investigation Bureau. So what I'm suggesting, Your Honor, is that when we focus on the defendants in this case, they definitely initiated the detention. But then they were either turned over to assisting departments or their arrival at where they would be investigated was coordinated through the city of Nenow officers. So it's the the measure that the court takes in this case is whether or not any of it was unreasonable with respect and when measured against the circumstances under which the detention was occurring. And so when you ask what about Mr. Peterson, you know, his was a little more intrusive. They took they took personal items from him. But he was also one of the individuals that was then turned over to one of the assisting agencies to coordinate the further interview with him. From the police officers perspective, what information did they need from each of the plaintiffs before it was appropriate to release? What the police officers have been provided at the time was a generalized description of the physical appearance of the shooter. And with respect to the opportunity to make sure they weren't armed, make sure that they weren't involved, because keep in mind, the first entry was met with a hail of gunfire. The fire extinguisher that got hit. The police officers generally believe that they had been ambushed, that there was that the report of one shooter and multiple hostages was false, that this was an actual setup. This was not one shooter, but multiple shooters. As the court observed, what had been reported over the telephone or over the dispatch was a fluid situation that was met with a real life encounter. So to address the court's question directly, they had to determine that they weren't just not the shooter, that they were not part of an ambush involving the shooter. And once satisfied that they had done that, they were then released to what I would call the second level. Thank you. And with no further questions, then my time is up and I appreciate the court's attention. Thank you, Mr. Worth.  Briefly, Judge. My main question, Your Honor, is by the time they could have resolved this with Peterson and Arado by a Terry stop and frisk, they did not have to take them to the police department in handcuffs to that police department. That's the protracted type of detention that we criticize in terms of branding summary judgment. And I have nothing further to add. Thank you. The case is taken under advisement.